UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20131-CR-ALTMAN

**UNITED STATES,**

    *Plaintiff*,

v.

**FRANCESCO CABRERA,**

    *Defendant*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

After Francesco Cabrera defrauded Blue Cross Blue Shield out of tens of thousands of dollars, this Court sentenced him to 20 months in prison. Pursuant to this Court's instructions, on Friday, May 1, 2020, he surrendered to the custody of the Bureau of Prisons (the "BOP"). The following Monday—after spending just two full days in prison—he asked the Warden of his facility to reduce his sentence to time served, or, in the alternative, to transfer him to home confinement. When the Warden ignored his request, Cabrera filed this Motion[1]—which this Court denies for three reasons.

*First*, Cabrera has not exhausted his administrative remedies. *Second*, he has not substantiated his claim that his incarceration presents "extraordinary and compelling" circumstances. And *third*, he has not even attempted to show that he's no longer a danger to the community.

---

[1] The Motion is now ripe. *See* Motion for Reduction in Sentence and for Compassionate Medical Release (the "Motion") [ECF No. 147]; Response to Motion for Reduction in Sentence (the "Response") [ECF No. 150]; Reply to Response to Motion for Reduction in Sentence (the "Reply") [ECF No. 154].

## THE FACTS

The Defendant, Francesco Cabrera ("Cabrera"), is 61 years old. Mot. ¶ 4. In 2019, he pled guilty to one count of conspiracy to commit healthcare fraud. *See* Indictment [ECF No. 1] at 6; Plea Agreement [ECF No. 108]. In exchange for his guilty plea, the Government dismissed seven additional counts of healthcare fraud. *Id*.

In the factual proffer he submitted at his guilty plea, Cabrera admitted that, between November 2016 and February 2019, he and his co-conspirators submitted false and fraudulent claims to Blue Cross Blue Shield. *See* Factual Proffer [ECF No. 109] at 1. As a medical doctor— and as the clinic's registered agent—it was Cabrera's role in the conspiracy to submit bills for both medically unnecessary tests and tests he never performed. *Id.* As Cabrera has acknowledged, the conspiracy's fraudulent billings totaled at least $190,000. *Id.*

After calculating Cabrera's advisory guidelines range and considering the § 3553 factors, this Court sentenced Cabrera to 20 months in prison, to be followed by 36 months of supervised release. *See* Judgment [ECF No. 139] at 2–3. The Court also ordered Cabrera to pay $67,940 in restitution. *Id.* Although Cabrera's current release date is September 30, 2021, he could get out earlier either because he's earned "good time" credits or if he's transferred to a half-way house. *See* Mot. ¶ 13.

At Cabrera's urging, this Court several times postponed Cabrera's surrender date—and so, Cabrera didn't actually report to FCI Miami until Friday, May 1, 2020. *See* Orders Granting Additional Days to Surrender [ECF Nos. 143, 145]. He spent the weekend in prison, and, on Monday, May 4, 2020, he asked the Warden to grant him compassionate release. *See* Mot. ¶ 5; *id*. Ex. C (Letter to the Warden). The Warden never responded to this request. Mot. ¶ 6. On June 9,

2020, 36 days after he sent the Warden his request, Cabrera filed this Motion. *See generally* Docket.

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Court will discuss each of these four steps in turn.

### I. Exhaustion of Administrative Rights to Appeal

Cabrera says that he's exhausted his administrative remedies because he waited more than 30 days after sending his Letter to the Warden before filing this Motion. *See* Mot. ¶ 5; *id.* Ex. C (Letter to the Warden). But, while Cabrera did send the Warden a letter, that letter did not contain the necessary information. Under 28 C.F.R. § 571.61(a), a request for a motion under § 3582(c)(1)(A) "shall be submitted to the Warden" and shall include, "at minimum," *both* "(1) [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" *and* the "(2) [p]roposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where

the inmate will receive medical treatment, and how the inmate will pay for such treatment." 28 C.F.R. § 571.61(a).

Cabrera's Letter to the Warden contained neither. In only seven sentences, the Letter identified Cabrera, described his term of incarceration (albeit inaccurately),[2] and concluded that, "[g]iven his age and pre-existing conditions as attached hereto he is a high-risk vulnerable person for COVID-19." Mot., Ex. C (Letter to the Warden). Notably absent, however, was any mention of a release plan or any details concerning where Cabrera planned to live or how he would support himself. *Id.* The letter thus does not satisfy the requirements of 28 C.F.R. § 571.61(a).

On similar facts, other courts in this Circuit have come to the same conclusion. *See United States v. Rivarola*, 2020 WL 5441272, at *2 (S.D. Fla. Sept. 9, 2020) ("Rivarola's request completely omitted this required information and therefore was a procedurally improper request to the Warden and failed to initiate the exhaustion period."); *United States v. Harris*, 2020 WL 1969951, at *1 (M.D. Fla. Apr. 24, 2020) ("[The Defendant] did not provide the Warden with the required minimum information like where he will live, how he will support himself, where he will receive medical treatment, and how he will pay for treatment if released. Because Harris has not exhausted his administrative remedies, the Court lacks authority to grant him relief under § 3582(c)(1)(A)(i)." (internal citation omitted)).

And, to the extent Cabrera is urging this Court to waive the exhaustion requirement, *see* Reply at 3, this Court has already explained why that requirement cannot be ignored. *See United States v. Leija*, 2020 WL 3547029, at *3 (S.D. Fla. June 30, 2020). As this Court has said, the Supreme Court has distinguished between exhaustion requirements that are mandated by statute and those that are judicially-created. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "Where

---

[2] The Letter incorrectly asserted that Cabrera's sentence was 22, rather than 20, months.

Congress specifically mandates, exhaustion is required. . . . But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* (cleaned up). The Eleventh Circuit has made this dichotomy between statutory and judicial exhaustion requirements pellucid. *See Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998) ("Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply."). As these cases make plain, federal judges may not waive exhaustion requirements that appear unambiguously in the text of a statute. *See Nesbitt v. Candler Cty.*, 945 F.3d 1355, 1358 (11th Cir. 2020) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself." (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc))); *cf.* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").

And the text of § 3582(c)(1)(A) could not be clearer. It says, in pertinent part, that a court "may not" modify a term of imprisonment until "*after* the defendant has *fully exhausted all* administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." (emphasis added). This language is unambiguous and may not be altered by judicial fiat. *See United States v. Kranz*, 2020 WL 2559551, at *2 (S.D. Fla. May 20, 2020) ("The language that Congress chose to use is clear and unambiguous. The Court cannot read exceptions into § 3582(c)(1)(A).").

\*\*\*

Cabrera, in short, failed to exhaust his administrative remedies—and so, his Motion must be **DENIED**. Nevertheless, as the Court explains below, even if Cabrera had exhausted his administrative rights to appeal, his Motion would still be denied for the reasons outlined below.

### II.        18 U.S.C. § 3553

After considering the relevant § 3553 factors, this Court sentenced Cabrera to 20 months in prison. *See* Judgment. Cabrera did not appeal, and the time to do so has elapsed. *See* Response at 2. Cabrera does not challenge this Court's application of the § 3553 factors. *See* Mot. And so, to the extent they are applicable, those factors counsel against a reduction here.

### III.       18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a

>> reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c)(1).

Because Cabrera is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> 1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,

>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

>**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
>(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including—
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Cabrera cannot satisfy the "Age of the Defendant" test: He is 61 years old, not 65; he has not alleged any age-related decline; and he has served neither 10 years nor 75% of his overall sentence. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Cabrera claims to suffer from hypertension, cardiomyopathy, valvulopathy, obstruction of nasal passages, and asthma/bronchitis with COPD. *See* Mot. ¶ 11.[3] But Cabrera only substantiates some of these ailments. So, for instance, while he points to a December 2019 medical report, which

---

[3] He also says that he is Hispanic, "which is a segment of the population with exceptionally higher numbers of COVID-19 infections." *Id.* ¶ 12.

9

found that he suffered from hypertension and asthma with COPD, he includes no evidence of any cardiomyopathy, valvulopathy, or obstruction of nasal passages. *See* Mot., Ex. A (clinical notes of Dr. Maria Cubillas).

According to the Government, when Cabrera was screened at FCI Miami in May 2020, he denied having either asthma or any cardiovascular diseases—though he did reveal his COPD. *See* Response at 9–10; *see also* Medical Records [ECF No. 152]. And, as the Government points out, Cabrera mentioned *none* of these ailments in his Sentencing Memorandum. *See* Response at 10. Cabrera explains this last omission by noting that he had not visited a doctor "in over six years" and only received these diagnoses just before he self-surrendered. *See* Reply at 3. But, while Cabrera insists he "visited a [c]ardiologist" who "was able to diagnose him" in "April/May 2020," he attaches no records from that visit. This Court will not release Cabrera on the basis of unsubstantiated claims about diseases he himself never disclosed, either to this Court (at sentencing) or to the BOP.

Nevertheless, even accepting that Cabrera suffers from these ailments, his Motion fails. To begin with, Cabrera never describes his conditions as (1) a "serious physical or medical condition," (2) "a serious functional or cognitive impairment," or (3) a part of his "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See generally* Mot. Nor does Cabrera contend that these diseases qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). *See id.*

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 8,100,000

people have tested positive for the disease, and over 218,000 Americans have died from it. *See CDC COVID Data Tracker.*, CDC (Oct. 1, 2020), available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Oct. 20, 2020).

And, while "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), the CDC has recognized that both COPD and hypertension put people "at increased risk of a severe illness," CDC *People at Increased Risk: People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 20, 2020). It is therefore conceivable that Cabrera could suffer a "serious physical . . . condition" *if* he were to contract COVID-19. But, even considering Cabrera's enhanced susceptibility to COVID-19, for three reasons, Cabrera's ailments do not constitute the kinds of "extraordinary and compelling reasons" that would justify the reduction he is seeking.

*First*, Cabrera provides no evidence to support his view that his conditions increase his risk of *contracting* COVID-19. *See generally* Mot. Cabrera, in fact, mentions the conditions at FCI Miami only *once* in his Motion. Mot. ¶ 20. Writing in early June, he points out that 15 inmates at FCI Miami had been infected with COVID-19. *See id.* As of this writing—some four months later—there are only *seven* inmates with active COVID-19. *See* Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed October 20, 2020). In this respect, Cabrera does not acknowledge, much less respond to, the Government's argument that the BOP has taken, and will continue to take, drastic measures to make FCI Miami as safe as possible in the circumstances. These include ending "[s]ocial and legal visits," which "remain suspended" in order "to limit the number of people entering the facility and interacting with inmates."

11

Response at 12. And, "[i]n order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month." *Id.* In short, Cabrera has not carried his burden of showing that he is at risk of *contracting* COVID-19.

*Second*, even if he *were* to contract COVID-19, Cabrera submits no evidence that his conditions would "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility," *see* U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii), or that he's significantly more vulnerable than the thousands of other incarcerated sexagenarians. After all, "virtually every person over the age of 50 has some health condition that could conceivably put that person at a greater risk of succumbing to the coronavirus, but this does not entitle every inmate over 50 to be released. Attorney General William Barr's memo urging the release of particularly vulnerable inmates is not a get-out-of-jail-free card for every incarcerated person." *United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020) (finding that an inmate who, during the COVID-19 pandemic, was 50 years old and suffered from hypertension had failed to satisfy the "extraordinary and compelling reasons" test); *see also United States v. Brown*, 2020 WL 2568807, at *4 (S.D. Fla. May 21, 2020) (concluding that, even during the COVID-19 pandemic, an inmate who was 44 years old and suffered from hypertension had failed to satisfy the "extraordinary and compelling reasons" test); *United States v. Burkes*, 2020 WL 2308315 (S.D. Fla. May 8, 2020) (petitioner's hypertension, coupled with the COVID-19 pandemic, did not constitute "extraordinary and compelling reasons"). Cabrera never argues that his ailments are particularly severe—and they evidently didn't stop him from committing the crimes for which he was convicted.

*Third*, Cabrera's request does not include any release plan. *See generally* Mot. Cabrera thus does not tell us where he'd be living and working (or with whom). Nor, it goes without saying, does Cabrera explain what safety measures he, his co-habitants, or his co-workers would be implementing. Without this information, the Court cannot say that Cabrera's risk of contracting COVID-19 would be lower at home than at FCI Miami. *Cf. United States v. Hambrick*, 2020 WL 3874163, at *1 (S.D. Ga. July 9, 2020) ("[W]ithout medical evidence and other necessary documentation (such as an approved home release plan) from which this Court may fully evaluate Hambrick's individual circumstances as they relate to the COVID-19 pandemic, the Court denies her request for compassionate release."). To the contrary, comparing the slow spread of the virus at FCI Miami with its ubiquity in Florida generally—and in South Florida in particular—one might well suppose that Cabrera will be much safer where he is.

Because Cabrera has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV.   18 U.S.C. § 3142

Even if Cabrera *had* exhausted his remedies, and even if he *had* shown compelling circumstances, his motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Cabrera has not even attempted to show that he represents no such danger. *See generally* Mot. (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See*

13

*Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). This omission is fatal to his claim.

### V. Home Confinement

Alternatively, Cabrera asks this Court to transfer him to home confinement "until this COVID-19 storm 'blows over' and then be returned to whatever balance is the [sic] of remaining of his sentence." Mot. ¶ 22. The Government opposes this request and argues that, "[o]nce a sentence is imposed, BOP alone is responsible for determining an inmate's place of incarceration." Response at 17. This dispute highlights an interesting (if non-dispositive) analytical question—whether ordering Cabrera to home confinement constitutes a mere reduction in sentence (Cabrera's view) or whether, instead, such an order would inappropriately infringe on the BOP's authority to determine where and how to house its inmates (the Government's position). As we explain below, however, Cabrera loses either way.

The Government is right when it says that this Court cannot tell the BOP where to house its inmates. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a particular facility or program. *See* § 3582(a). But decisionmaking authority rests with the BOP."); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). And home confinement is still a form of "incarceration." *United States v. Springer*, ____ F. App'x ____, 2020 WL 3989451, at *2 (10th Cir. July 15, 2020); *see also id.* ("Springer was transferred to home confinement under the recently enacted CARES Act due to the COVID-19 pandemic. Springer's transfer to home confinement is not a release from imprisonment, nor does this transfer reduce the length of his custodial sentence."); *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014) ("Section 3624(c) makes clear that, even though a

14

prisoner is . . . in home confinement, he is still serving a 'term of imprisonment.' When read together, these statutes plainly indicate that a person is in the BOP's 'custody' while serving the remainder of a sentence in home confinement." (internal citations omitted)).

While the Eleventh Circuit has not said whether courts may order home confinement under § 3582(c)(1)—the compassionate release provision at issue here—its analysis of the closely-related § 3582(c)(2) is instructive. Like our § 3582(c)(1), § 3582(c)(2) allows an inmate to petition for a reduced sentence *only* after the U.S. Sentencing Commission has lowered the Guidelines range under which that inmate was sentenced. *See* 18 U.S.C. § 3582(c)(2) ("In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."). And, in the context of § 3582(c)(2), the Eleventh Circuit has made clear that district courts may not intrude on the BOP's core sphere of expertise by directing an inmate to home confinement. *See United States v. Anderson*, 517 F. App'x 772, 775 (11th Cir. 2013) ("[T]o the extent that Anderson requested that the district court order the BOP to place him in home confinement, that request is outside the scope of § 3582(c)(2). The BOP, not the district court, retained authority to choose the place of Anderson's incarceration.").

Notably, the only federal appellate court to consider this issue under the provision at issue here (§ 3582(c)(1)) held—consistent with the Eleventh Circuit's approach in *Anderson*—that "the authority to grant home confinement remains solely with the Attorney General and the

BOP." *United States v. Brummett*, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020). And many district courts in this Circuit agree. *See United States v. Bonilla Mesa*, 2020 WL 4757335, at *7 (S.D. Fla. July 17, 2020) ("Defendant asks, in the alternative, that the Court place him on home confinement for the remainder of his sentence. The Court has no authority to order this relief."); *United States v. Israel*, 2020 WL 3893987, at *9 (S.D. Fla. July 10, 2020) ("First, to the extent that Defendant seeks release to home confinement, the Court is without authority to grant the requested relief."); *United States v. Christian*, 2020 WL 5518616, at *1 (S.D. Ga. Sept. 14, 2020) ("This Court lacks the authority to order the BOP to release a prisoner on home confinement."); *United States v. Hester*, 2020 WL 5535010, at *1 n.1 (M.D. Ala. Sept. 15, 2020) ("To the extent that Hester seeks release to home confinement pursuant to the CARES Act due to the COVID-19 pandemic (doc. 66 at 10), the Court has no authority to order the Bureau of Prisons to change the Defendant's current place of incarceration."); *United States v. Brantly*, 2020 WL 5514571, at *1 (M.D. Fla. Sept. 14, 2020) ("However, the Court has no authority to direct the Bureau of Prisons (BOP) to place Brantley in home confinement because such decisions are committed solely to the BOP's discretion."). This Court, then, (very likely) does not have the authority to grant Cabrera the alternative relief he seeks.[4]

---

[4] Of course, this discussion is, in some respects, academic because the Court could achieve the same result by simply reducing Cabrera's sentence to time served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *Israel*, 2020 WL 3893987, at *9 ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, the Court would have to conclude that Cabrera has carried his burden of showing that he's entitled to that reduction—which, for the reasons outlined above, he has failed to do.

16

But, even if this Court *could* order the BOP to send Cabrera to home confinement, this Court would decline to do so in the circumstances of this case. Cabrera, again, has given the Court no information about where he would live (or with whom), where he would work (and with whom), or what safety measures he and his co-habitants plan to implement. Without this information, the Court cannot say that Cabrera would be any safer in home confinement than he is at FCI Miami.

\*\*\*

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** as follows:

1. The Defendant's Motion for Reduction in Sentence [ECF No. 147] is **DENIED**.

2. The Government's Motion to Seal [ECF No. 151] is **GRANTED**. The Defendant's medical records [ECF No. 152] shall remain under seal until further order of the Court.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 20th day of October 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record